# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DENNIS MALIPURATHU,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-CV-396-JHP-PJC** |
| | ) | |
| **BRAD JOHNSON, CARL BEAR,** | ) | |
| **TERRY MARTIN, ROBERT PATTON,[1]** | ) | |
| **ADEBAYO OJEKALE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a pro se prisoner currently in custody of the Oklahoma Department of Corrections (DOC) at James Crabtree Correctional Center, in Helena, Oklahoma. On January 21, 2014, Defendants filed a Special Report (Dkt. # 22), along with a motion to dismiss (Dkt. # 23). On March 14, 2014, Plaintiff filed a response to the motion (Dkt. # 37). Because the document was titled "Plaintiff's Response to Defendants' Motion to Dismiss /Plaintiff's Summary Judgment," the Clerk of Court also docketed the response as a motion for summary judgment filed by Plaintiff (Dkt. # 38). On March 28, 2014, Defendants filed a motion to strike Plaintiff's Response citing a violation of the Court's local rules (Dkt. # 39). Plaintiff filed a response (Dkt. # 40). On April 21, 2014, Plaintiff filed a motion for an evidentiary hearing to preserve a claim. (Dkt. # 43).

---

[1]Robert Patton has succeeded Justin Jones as Director of the Oklahoma Department of Corrections. For that reason, the Court Clerk shall be directed to substitute Robert Patton, Director, in place of Justin Jones, Director. See FED. R. CIV. P. 25(d). Additionally, to the extent Plaintiff named a John Doe defendant as a place holder for a successor DOC director, that need is now moot. The John Doe defendant shall be dismissed from this action.

For the reasons discussed below, the Court denies Defendants' motion to dismiss (Dkt. # 23), finds insufficient and denies Plaintiff's motion for summary judgment (Dkt. # 38), finds Defendants' motion to strike (Dkt. # 39) moot, and denies Plaintiff's motion for an evidentiary hearing (Dkt. # 43). Additionally, the Court directs Defendants to file a motion for summary judgment within thirty (30) days of this order.

### *FACTUAL BACKGROUND*

Plaintiff is a practitioner of the Sikh religion. (Dkt. # 1 at 6). Prior to his transfer to Dick Conner Correctional Center (DCCC), Plaintiff was approved for a halal diet at William S. Key Correctional Center (WKCC). Id. When Plaintiff arrived at DCCC, he requested a halal religious diet by completing the necessary forms and listed his religion as Sikh. Id. at 6, 18. DCCC Chaplain Brad Johnson, a named defendant, denied the request, stating that "[a]ccording to policy Sikh is not eligible to receive a Halal Diet. This is only for those who are Muslim or Nation of Islam. . . . [I]f you wish to have Sikh added to the list of religions eligible for the Halal Diet you may submit that request to [Agency Chaplain Leo Brown] through my office." Id. at 19. Plaintiff alleges that he told Defendant Johnson he was approved for the halal diet at WKCC and Defendant Johnson allegedly told Plaintiff that Plaintiff should have listed Islam as his religious preference and the "halal diet would be approved immediately." Id. at 7. Plaintiff allegedly submitted a second religious diet request listing "Sikh/Islam" as his religion and the halal diet was approved.

Once Plaintiff began receiving the halal diet, he began to file Requests to Staff (RTS) complaining that the halal diet improperly contained kosher foods. Id. at 8. Plaintiff alleges he notified all of the named defendants of the improper foods in the halal diet through conversations and through DOC's administrative review and appeal process. Id. at 7-11. Plaintiff alleges that

Defendants responded by stating they were required to follow DOC policy and meals were served in compliance with that policy.  Id. at 9, 27.  Additionally, Plaintiff alleges that he sent an RTS to Defendant Johnson with complaints about the halal diet containing kosher meals.  Defendant Johnson responded to the RTS by stating, "[m]eals are prepared according to the DOC master menu. . . . If you are not satisfied with the diet and wish to be removed let me know and I will take you off the list."  Id. at 23.  In his administrative appeal, Plaintiff wrote that he felt Defendant Johnson was "denying my right to practise [sic] my religion by enforcing a policy to intentionally deprive freedom of religion."  Id. at 26.  In Plaintiff's complaint, he also provides a copy of the "Halal Diet" menu for a week in March 2013.  Id. at 22.  He states that only three of the twenty-one meals on the menu are halal, though he does not explain why he believes the other 18 meals are non-halal. Additionally, Plaintiff includes handwritten notes of meals he was served from April 25, 2013, through May 18, 2013.  Id. at 29.  He uses these notes to demonstrate that only three or four meals per week are halal, but fails to provide any explanation as to what makes the remaining meals non-halal.  Id.

## COMPLAINT

Plaintiff raises a single count in his § 1983 complaint.  He alleges the Defendants violated his First Amendment constitutional rights, namely those rights protected by the Free Exercise and Establishment Clauses of the First Amendment.  Id. at 5.  Plaintiff claims the Free Exercise Clause "guarantees DOC will not prevent Plaintiff from pursuing any religion."  Id.  Plaintiff also contends that the Establishment Clause "prevents DOC from[] forcing plaintiff to choose between violating a tenet of his faith and eating[,] coercing Plaintiff to pick a different religion so that Plaintiff can

3

properly practise [sic] his religion . . . and establishing a rule/policy that intentionally violates the religious diet requested." Id. at 6.

In the "Nature of the Case" section of the complaint, Plaintiff describes his case as follows:

This action is to seek a permanent injunction against DOC to serve Plaintiff with foods that are consistent with the religious diet Plaintiff has requested, and ensure that DOC does not intentionally violate Plaintiff's 1st Amendment rights through enforcement of prison rules (DOC OP#). DOC is an instrumentality of the state. Named Defendants have been given notice by Plaintiff that his religious diet has been intentionally violated by a prison rule and is due protection during Plaintiff's custody. DOC policy increases Plaintiff's vulnerability to violate a tenet of his faith and eat non-halal foods (meat) or follow his faith and starve by not eating foods that are inconsistent with the diet requested. Plaintiff claims DOC policy illegally and intentionally violates the establishment clause; the DOC master menu for halal diet intentionally feeds (18)-meals per week that is inconsistent with the diet requested, feeding Plaintiff with Kosher foods; and Plaintiff was coerced to alter his choice of religion to participate in his requested diet at DCCC.

Id. at 4-5. In his request for relief, Plaintiff seeks four specific remedies:

1. Permanent injunction preventing DOC from placing Plaintiff into solitary confinement or transferring plaintiff to private prisons . . . as a means of retaliation and shirking its (DOC's) responsibility to provide "halal" diet at no cost to Plaintiff; as previously ruled in Harmon v. Jones, 2012 WL 6765597;

2. Permanent injunction to change DOC policy to "serve only foods that are consistent with religious diet requested, where the institution is the source of the food" ensuring protection of Plaintiff's 1st amendment rights;

3. Grant the cost of this action upon Defendants and reimburse Plaintiff for incurred expenses;

4. Grant any amount of equitable, element of damage the court may deem fit; for instance, Circuit Courts have awarded from $300 per day to $200,000 for acts constituting deprivation of liberty to denying religious practice.

Id. at 11-12.

Defendants argue Plaintiff's complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. # 23 at 1). Defendants

argue that Plaintiff has failed to "sufficiently allege how Defendants are violating his Constitutional rights." Id. Additionally, Defendants argue that Plaintiff failed "to set forth sufficient allegations against Defendants Bears, Johnson, Martin and Ojekale that they personally participated in a violation of his constitutionally-protected rights." Id. at 11. Finally, Defendants argue that they are not coercing Plaintiff "to choose a different religion as the 'kosher' meals equally conform to the dictates of Halal." Id. at 12.

## ANALYSIS

### A.    Legal Standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). To avoid dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. Id. at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558. Twombly articulated the pleading standard for all civil actions. See Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

5

A pro se plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). A defendant must personally participate in the alleged conduct causing the constitutional violation to be held liable under § 1983. Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011); Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993). The plaintiff must also allege that the defendant intentionally deprived him of a constitutional right. Martinez v. Uphoff, 265 F.3d 1130, 1133-34 (10th Cir.

6

2001).  "Neither simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983."  Johnson v. Martin, 195 F.3d 1208, 1219 (10th Cir. 1999) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992)).

In Plaintiff's single claim for relief, violation of his First Amendment rights, he sets forth two sub-claims: violation of the Free Exercise Clause and violation of the Establishment Clause.  The Court addresses these in reverse order.

**B.      Establishment Clause**

In the motion to dismiss, Defendants argue that Plaintiff fails to state a claim for relief under the Establishment Clause.  They claim Plaintiff fails to "assert any allegations the Defendants have established a state religion" and Plaintiff fails to state a claim that Defendants "coerc[ed] him to support or participate in Jewish religious practices."  (Dkt. # 23 at 12).  Defendants conclude that the accommodation of Jewish inmates "does not indicate Defendants are coercing [Plaintiff] to choose a different religion as the 'kosher' meals equally conform to the dictates of Halal."  Id.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."  U.S. CONST. amend. I.  "It is an elemental First Amendment principle that government may not coerce its citizens 'to support or participate in any religion or its exercise.'"  Town of Greece, N.Y. v. Galloway, No. 12-696, slip op. at 14 (U.S. May 5, 2014) (quoting County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter, 429 U.S. 573, 659 (1989) (Kennedy, J., concurring)).  "The Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political

7

community.'" County of Allegheny, 492 U.S. at 593-94 (quoting Lynch v. Donnelly, 465 U.S. 668, 687 (1984) (O'Connor, J., concurring)).  When evaluating claims that government action violates the Establishment Clause, the federal courts routinely apply the test set forth by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971).  See Robinson v. City of Edmund, 68 F.3d 1226, 1229 (10th Cir. 1995) (acknowledging that the test has been harshly criticized by several Justices and federal courts, but never overruled and courts have "continued to apply it almost exclusively"); see also Van Orden v. Perry, 545 U.S. 677, 685-86 (2005) (recognizing that, when the Lemon test does not fit the facts of the case, a few recent Supreme Court decisions applied different tests to Establishment Clause claims).  Under Lemon, government action does not run afoul of the Establishment Clause if (1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion, and (3) the action must not foster excessive government entanglement with religion.  Id. at 412-13.

The Supreme Court refined the Lemon analysis, stating that "government impermissibly endorses religion if its conduct has either (1) the purpose of or (2) the effect of conveying a message that 'religion or a particular religious belief is favored or preferred.'"  Bauchman for Bauchman v. West High School, 132 F.3d 542, 551 (10th Cir. 1997).   "[T]he purpose component of the endorsement test should evaluate whether the government's 'actual' purpose is to endorse or disapprove of religion . . . [and] [t]he effect component . . . evaluate[s] whether a 'reasonable observer,' aware of the history and context of the community in which the conduct occurs, would view the practice as communicating a message of government endorsement or disapproval."  Id. at 551-52 (citing Capital Square Review & Advisory Bd. V Pinette, 515 U.S. 753, 779-81 (1995) (O'Connor, J., concurring)).  The Tenth Circuit determined the "appropriate" Establishment Clause

8

analysis includes "both the purpose and effect components of the refined endorsement test, together with the entanglement criterion imposed by <u>Lemon</u>." <u>Id.</u> at 552.  In order to overcome a motion to dismiss, a plaintiff must allege facts, when accepted as true, that suggest a violation of any part of this analysis.

The Court finds Plaintiff has satisfied this burden.  Plaintiff alleges that Defendant Johnson told him "should Plaintiff enter Islam as his religious preference, halal diet would be approved immediately." (Dkt. # 1 at 7).  Plaintiff claims this "coerced [him] to alter his choice of religion to participate in his requested diet." <u>Id.</u> at 5.  In his response to Plaintiff's motion to dismiss, Plaintiff also states that he "is unable to choose his religious belief because []DOC does not recognize/authorize the religion to receive a specific diet." (Dkt. # 37 at 2).  The alleged statement and DOC policy could be viewed by a reasonable observer, aware of the context that DCCC is a penal institution housing convicted criminals in Oklahoma, as a message of "government endorsement or disapproval" of a religion.  However, Plaintiff also provides a written explanation for the initial denial of the halal diet from Defendant Johnson.  Defendant Johnson explains to Plaintiff a process by which the Sikh religion can be "added to the list of religions eligible for the Halal Diet." <u>See</u> Dkt. # 1 at 19.  This suggests that DOC has a reasonable means of addressing Plaintiff's request for a religious diet.  Plaintiff also concedes he was approved for the halal diet six days after the initial denial.  <u>See id.</u> at 7.  Nevertheless, Plaintiff's burden was to allege that Defendants plausibly violated any part of the Establishment Clause analysis.

Having found Plaintiff stated a plausible claim of "government endorsement or disapproval" of a religion, it is not necessary to examine the purpose component or the entanglement criterion imposed by <u>Lemon</u>.  Defendant's motion to dismiss the Establishment Clause claim is denied.

C.      **Free Exercise Clause**

As the second subpart of his claim, Plaintiff alleges that Defendants have violated and are continuing to violate his rights under the Free Exercise Clause in the First Amendment.  (Dkt. # 1 at 5).  Defendants argue the claim must be dismissed because Plaintiff "failed to allege sufficient facts to indicate how Defendants have violated his First Amendment Rights."  (Dkt. # 23 at 7).  Defendants also argue that Plaintiff does not "clearly state how the diet he receives does not conform to a Halal diet."   Finally, Defendants argue that "federal courts have previously addressed this complaint and determined that Kosher and vegetarian meals are constitutionally sufficient for inmates receiving a Halal diet." Id.  (citing Caruso v. Zenon, 2005 WL 5957978 (D. Colo. July 25, 2005) (unpublished)[2]; Abdulhaseeb v. Calbone, 600 F.3d 1301, 1306 (10th Cir. 2010); Williams v. Morton, 343 F.3d 212 (3d Cir. 2003); Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 810 (8th Cir. 2008)).

The Free Exercise Clause of the First Amendment applies to the States through the Fourteenth Amendment.  See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).  Prisoners "'retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'"  Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).  However, the Supreme Court permits penal institutions to place reasonable limitations on these rights.  The Court has held that "a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 349.

---

[2]This and other unpublished court decisions are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

The Tenth Circuit has set forth a two-step inquiry for evaluating an alleged constitutional violation of the Free Exercise Clause. See Kay, 500 F.3d at 1218-19. The prisoner plaintiff must show that a prison regulation "substantially burdened sincerely-held religions beliefs." Id. at 1218 (internal citation omitted). A "substantial burden" exists under the Free Exercise Clause when a plaintiff alleges the beliefs at issue are religious in nature and sincerely held. Id. Plaintiff must allege more than "isolated act[s] of negligence" in order to establish a substantial burden. See Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009). If the prisoner satisfies this burden, the prison officials may "identify the legitimate penological interests that justified the impinging conduct." Kay, 500 F.3d at 1218 (internal citation omitted). Then, the court must determine the reasonableness of the regulation based on the factors set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987).

The Tenth Circuit follows the rule that "religious dietary practices [are] constitutionally protected . . . even if such dietary practices are not doctrinally 'required' by the prisoner's religion. 'Sincerely held' is different from 'central,' and courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion." Kay, 500 F.3d at 1220 (quoting Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007)). Thus, the inquiry is not whether the provision of kosher meals in a halal diet substantially burdens the religious exercise of any practitioner whose religion follows the halal diet, but whether the provision of kosher meals substantially burdens plaintiff's own exercise of his sincerely held religious beliefs. See Abdulhaseeb, 600 F.3d at 1314.

The Court finds the cases cited by Defendants unpersuasive and do not stand for the stated proposition that federal courts have determined that kosher and vegetarian meals are constitutionally

11

sufficient for halal.  In <u>Caruso</u>, the prisoner plaintiff, a practitioner of the Hanafi school of Sunni Islam, complained that defendants' failure to provide him with halal red meat imposed a substantial burden on his religious practices.  In setting out the facts of <u>Caruso</u>, the district court, without any citations, stated that "a kosher diet, to the extent it does not contain alcohol, is considered halal." <u>Caruso</u>, 2005 WL 5957978, at *2.  However, the district court ultimately found Caruso was entitled to judgment with regard to his halal diet because the government failed to show that their policy of not serving halal meat served a compelling government interest by the least restrictive means.  <u>Id.</u> at *12. In resolving Caruso's claims, the district court did not specifically find that Kosher and vegetarian meals are constitutionally sufficient for inmates receiving a halal diet.

Defendants next cite <u>Abdulhaseeb</u>.  In <u>Abdulhaseeb</u>, the Tenth Circuit reversed summary judgment for the Defendants on Abdulhaseeb's religion-based claim.  Abdulhaseeb, a Muslim, claimed he was denied halal meat for an Islamic feast and provided vegetarian or non-pork common fair food instead.  The Tenth Circuit concluded that there were genuine issues of material fact regarding whether DOC's policy regarding halal food substantially burdened Abdulhaseeb's religious exercise and remanded these claims to the district court for further proceedings.[3]

---

[3]On remand, the district court entered an order derived from a settlement reached between the parties.  In paragraph 6 of the order, entered on February 2, 2012 in W.D. Okla. Case No. CIV-05-1211, the district court ordered that:

[A] Halal diet that shall consist of foods prepared and served in compliance with the standards and procedures described in DOC OP–070202, Attachment "A", with the exception of the provisions under the headings of "Dinner," "Shabbat" and "Other" that address Judaic practices that are inapplicable to Islam, shall be provided to the Plaintiff so long as he is housed in a DOC facility or in any facility contracted with DOC. It is hereby PROVIDED further that where the menu calls for prepackaged Kosher meals, comparable pre-packaged Halal meals shall be provided to the Plaintiff so long as he is housed in a DOC facility or in any facility contracted with DOC. The foregoing requirements of Paragraph 6 shall be implemented within thirty

Abdulhaseeb, 600 F.3d at 1316.  Contrary to Defendants' assertion, the Tenth Circuit did not

determine whether a kosher or vegetarian diet was "constitutionally sufficient" for inmates receiving

a halal diet.[4]  Instead, the Tenth Circuit cited to publications by the Islamic Food and Nutrition

Council of America (IFANCA) and Islamic Services of America (ISA), which stated that a "'halal'

or 'lawful' diet, prohibits items deemed 'haram' (or 'unlawful'), including pork and its by-products,

animals improperly slaughtered or killed, alcohol or intoxicants, blood and blood by-products, and

foods contaminated with haram products."  Id. at 1313.  The Circuit also noted that IFANCA and

ISA offer "a certification procedure, by which halal products are marked with a logo that confirms

their halal status."  Id.  Additionally, the Tenth Circuit distinguished Abdulhaseeb from Patel[5] and

other cases similar to Patel, because those courts, in finding that there was no burden on the prisoner

plaintiffs, "rel[ied] on prisoners being able to purchase or obtain donated halal foods."  Id. at 1317.

The Tenth Circuit did not find that reasoning persuasive because it had "rejected the assertion that

Jewish inmates had an alternative means of practicing their religion by purchasing or obtaining

_____

(30) days of the filing of this Order

Abdulhaseeb v. Jones, 2013 WL 1288642 (W.D. Okla. Jan. 7, 2013).

   [4]The Court acknowledges that Defendants cite additional cases in support of their proposition
that Kosher and vegetarian meals are constitutionally sufficient for a halal diet.  However, none of
those cases stand for Defendants' stated proposition.

   [5]Patel, a federal prisoner, argued that the U.S. Bureau of Prison's meal plan "substantially
burdened his ability to practice his religion through an appropriate diet."  Patel, 515 F.3d at 812.
The Eighth Circuit stated, in the factual background, "[g]enerally, vegetarian dishes are halal unless
they have been otherwise contaminated, such as coming into contact with haram foods or being
cooked or served in containers that have been in contact with haram foods without being properly
cleaned.  Such cross-contamination renders the halal foods haram."  Id. at 810-11.  The Eighth
Circuit stated that Patel had the option of purchasing halal vegetarian entrees and "[w]hile this
option places a financial burden upon him, Patel [failed to show] that it is substantial."  Id. at 814.
Contrary to Defendants' assertion, the Eighth Circuit did not determine Kosher and vegetarian meals
are constitutionally sufficient for inmates receiving a halal diet.

donated kosher food."  Id. at 1318 (citing Beerheide v. Suthers, 286 F.3d 1179, 1187 (10th Cir.

2002) ("Purchasing meals in the canteen is financially impossible for prisoners of limited means.")).

The Tenth Circuit concluded that summary judgment for the defendants was improper because

genuine issues of material fact remained concerning the extent of Plaintiff's burden and Defendants'

burden of proof.  Id. at 1319.

　　　The Court finds Strope v. Cummings, 381 F. App'x 878 (10th Cir. 2010) (unpublished)

illustrative.  Strope, a Jewish prisoner, raised complaints regarding his kosher diet.  His complaints

were general in nature – his meals had less variety than the regular meals and some fruits and

vegetables were wilted or rotten.  Strope also complained of seven specific instances when he

received inadequate or non-kosher food. Id. at 880-81. The Tenth Circuit noted that in Abdulhaseeb,

it held that "the flat denial of a halal diet with approved meats was actionable, but [] an incident (the

panel concurrence notes 'sporadic incidents') in which a prisoner's meal was rendered inedible by

service of prohibited items contaminating his tray was not actionable." Strope, 381 F. App'x at 882.

The Circuit found that Strope's complaints reflected "the inconvenience of non-preferred or

occasionally unsatisfactory items in a meal . . . [and] none were shown to have completely denied

an edible meal to the prisoner."  Id. at 882; see also Gallagher, 587 F.3d at 1070 (prisoner alleged

only "isolated acts of negligence, not pervasive violations of [prisoner's] right to free exercise of

religion").  The Circuit concluded Strope failed to show there was a substantial burden placed on

his religious practice and affirmed the entry of summary judgment for the defendants.  Strope, 381

F. App'x at 882.

　　　Other district courts in the Tenth Circuit have followed the guidance of Abdulhaseeb and

Strope when determining whether a prisoner plaintiff alleged only sporadic incidents of

constitutional violations or alleged facts sufficient to show a substantial burden necessary for the claim to survive a motion to dismiss. In <u>Hachmeister v. Kline</u>, 2013 WL 237815 (D. Kan. Jan. 22, 2013), the court dismissed the complaint because plaintiff alleged sporadic incidents where he was denied halal meals only a few times. This was insufficient to create a substantial burden on his religious practice. In <u>Hemphill v. Jones</u>, 2012 WL 7059643 (W.D. Okla. Oct. 31, 2012), the plaintiff alleged he was denied a vegetarian "non-pork/non-beef" meal on four occasions. The district court found this was a *de minimus* burden on plaintiff's religious exercise and, therefore, plaintiff failed to state a claim. In <u>Watkins v. Rogers</u>, 2012 WL 5362202 (W.D. Okla. Sept. 28, 2012), the plaintiff alleged he was deprived of four religious meals over a two-day period after he arrived at the Federal Transfer Center in Oklahoma City, Oklahoma. The district court found no support for the claim that the deprivation created a substantial burden on the exercise of plaintiff's belief and dismissed the claim.

Here, Plaintiff alleges more than isolated or sporadic incidents of not receiving a halal meal. Additionally, unlike Strope, Plaintiff does not allege a displeasure with the variety of the menu served. Plaintiff alleges that he is receiving only three to four halal meals per week and that the DOC halal meal menu includes non-halal items.

Assuming Plaintiff's factual allegations are true, Plaintiff alleges "enough facts to state a claim that is plausible on its face." <u>See</u> <u>Twombly</u>, 550 U.S. at 570. There is no dispute that Plaintiff clearly identifies his religion as Sikh and that part of his practice of his religion is to follow a halal diet. Defendants do not directly dispute that his religious beliefs are sincere and the exhibits included with Plaintiff's complaint indicate a sincere religious belief. Plaintiff is asserting that the "halal meals" served in accordance with both the DOC religious meal policy and the DOC master

15

menu violate his religious practice.  Plaintiff also alleges Defendants continue to serve Plaintiff non-halal meals though he is on a halal diet.

Further, Plaintiff alleges personal participation of the Defendants.  Except for Defendants Johnson and Patton, Plaintiff alleges Defendants were directly involved in providing non-halal food either by serving the non-halal meals or enforcing the DOC policy that provides for non-halal meals. Plaintiff alleges that Defendant Johnson initially denied his religious diet because his religion was not on an approved list for the halal diet and that Defendant Johnson's response to his RTS, "in essence" denied Plaintiff his right to practice his religion "by enforcing a policy to intentionally deprive freedom of religion."  Finally, Plaintiff alleges Defendant Patton, as DOC Director, is responsible for the DOC religious meal policy and master menu.  The Court concludes Defendants' arguments that Plaintiff failed to allege personal participation or that Plaintiff failed to state a plausible claim fail.  Defendants' motion to dismiss the Free Exercise claim is denied.

**D.**     **Defendants shall file a motion for summary judgment**

The Court directs Defendants to file, within thirty (30) days of entry of this Order, a motion for summary judgment addressing Plaintiff's Establishment Clause and Free Exercise Clause claims. In their motion, Defendants shall address whether DOC policy, and actions by Defendants in accordance with that policy, satisfy the four-prong test set forth in <u>Turner v. Safley</u>, 482 U.S. 78 (1987) and discussed by the Tenth Circuit in <u>Kay v. Bemis</u>, 500 F.3d 1214, 1218-1221 (10th Cir. 2007).  Plaintiff shall file a response to the motion within twenty-one (21) days thereafter. <u>See</u> LCvR7.2(e). Should Plaintiff fail to file a response to the motion, the Court will be authorized, in its discretion and upon notice to Plaintiff, to deem the matter confessed and enter the relief requested by Defendants. <u>See</u> LCvR7.2(f).  Plaintiff's response should contain all arguments and exhibits

16

necessary to respond to Defendants' motion for summary judgment.  Defendants may file a reply within fourteen (14) days of the filing of Plaintiff's response.

**E.      Resolution of additional motions**

In response to Plaintiff's "Response to Defendants' Motion to Dismiss/Plaintiff's Summary Judgment," Defendants filed a Motion to Strike Document.  (Dkt. # 39).  Defendants argue that Plaintiff's filing violates local rule LCvR7.2(e) (forbidding a response to also include a motion). Id.  Additionally, Defendants argue that Plaintiff violated local rule LCvR7.2 when his brief exceeded the twenty-five page limit.  Id.  In response, Plaintiff requests "leave to proceed in this manner within the document itself." (Dkt. # 40 at 1).

After careful review of both motions and Plaintiff's response, the Court concludes that Plaintiff's purported motion for summary judgment is not sufficient to be considered a motion for summary judgment under FED. R. CIV. P. 56.  Though Plaintiff titles the document "Plaintiff's Response to Defendants' Motion to Dismiss/Plaintiff's Summary Judgment," and to the extent Plaintiff intended his filing to include a motion for summary judgment, Plaintiff does not set forth the proper legal standard for summary judgment according to FED. R. CIV. P. 56.  See, e.g., Jones v. Gatzambide, 940 F. Supp. 182, 189 n.4 (N.D. Ill. 1996); Johnson v. Capital Offset Co., Inc., 2013 WL 5406624, at *2 (D.N.H. Sept. 25, 2013) (unpublished); Oshilaja v. Watterson, 2007 WL 2903029, at *9 (D. Ariz. Sept. 30, 2007) (unpublished) ("[i]t is insufficient because plaintiffs are relying upon their pleading, rather than 'setting forth specific facts showing that there is a genuine issue for trial'").  Further, at the end of the response, Plaintiff states "Plaintiff's motion should also be treated as an affidavit for purposes of summary judgment if it satisfies FED. R. CIV. P., RULE 56(e)."  (Dkt. # 37 at 41).  Even construed broadly, the Court does not find that this language

sufficiently sets forth the proper legal theories to construe any part of Plaintiff's response as a motion for summary judgment. Therefore, the Court denies Plaintiff's motion for summary judgment. Defendants' motion to strike (Dkt. # 39) is moot. The Court has given full consideration to Plaintiff's filing as a response to Defendants' motion to dismiss.

On April 21, 2014, Plaintiff filed a motion, docketed by the Clerk of Court as a motion for an evidentiary hearing. (Dkt. # 43). In Plaintiff's motion, he states an evidentiary hearing is necessary to preserve claims because "Defendants' Counsel is presenting a defense contrary to current Federal law." Id. at 1. Plaintiff also appears to raise a new claim against Defendants and a third-party and requests the Court to "evince that 'LaBriute Meals' food products are not Halal-certified," and to "impose a grand jury investigation in regard to the Federal Mislabeling Act" because an individual is labeling kosher-certified meals as Halal. Id. at 2-3. The Court will not consider a new claim or a new defendant improperly presented by Plaintiff in a motion.

The Tenth Circuit has held that district courts have discretion whether to grant an evidentiary hearing. See, e.g., Rouse v. Colorado State Bd. Of Parole, 242 F. App'x 498 (10th Cir. 2007) (unpublished). Furthermore, "a district court reviewing the sufficiency of a complaint presumes that the plaintiff's factual allegations are true." Morris v. Cody, 956 F.2d 278 (10th Cir. 1992) (citing Freeman v. Dept. of Corr., 949 F.2d 360, 361 (10th Cir. 1991)). After carefully considering the nature of Plaintiff's allegations in his motion for an evidentiary hearing, the Court finds that Plaintiff's motion shall be denied at this time. Should the Court later determine that an evidentiary hearing is necessary, an appropriate Order will be entered.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The Clerk of Court shall substitute Robert Patton, Director, in place of Justin Jones, Director.

18

2.      Defendant John Doe is **dismissed without prejudice**.

3.      Defendants' motion to dismiss (Dkt. # 23) is **denied**.

4.      Plaintiff's motion for summary judgment (Dkt. # 38) is **denied**.

5.      Defendants' motion to strike (Dkt. # 39) is **declared moot**.

6.      Plaintiff's motion for an evidentiary hearing (Dkt. # 43) is **denied** at this time.

7.      Within thirty (30) days of the entry of this Order, Defendants shall file a motion for summary judgment as directed herein.  Plaintiff shall file a response to the motion for summary judgment within twenty-one (21) days of the filing of the motion.  Defendants may file a reply within fourteen (14) days of the filing of Plaintiff's response.

**DATED** this 12th day of May, 2014.

James H. Payne
United States District Judge
Northern District of Oklahoma